# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA



### CIVIL MINUTES - GENERAL

Case No. SACV 10-1923 DOC (JCGx)                                    Date: July 25, 2011

Title: JEAN C. WILCOX , ET AL. v. EMC MORTGAGE CORP., ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|:---:|:---:|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

| NONE PRESENT | NONE PRESENT |
|:---:|:---:|

PROCEEDING (IN CHAMBERS): GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS

       Before the Court is a Motion to Dismiss filed by Defendants EMC Mortgage Corporation and J.P. Morgan Chase Bank, N.A. in the above-captioned case ("Motion to Dismiss") (Docket 17). After considering the moving, opposing and replying papers, the Court GRANTS in part and DENIES in part the Motion to Dismiss.

## I.     BACKGROUND

       Defendants J.P. Morgan Chase Bank, N.A., ("Chase") and its subsidiary EMC Mortgage Corporation ("EMC") (collectively, "Defendants") are in the business of servicing mortgage loans.  In 2008, due to the unprecedented financial crisis, the United States Government provided financial institutions with close to $700 billion under the Troubled Asset Relief Program ("TARP").[1]  A key

---

[1] A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th

feature of TARP is the Home Affordable Modification Program ("HAMP"), which allows banks to receive incentive payments for providing mortgage loan modifications to eligible borrowers. Defendants were among the many recipients of HAMP funds.

In the Second Amended Complaint ("SAC") filed in this case, Plaintiffs claim that Defendants did not put these funds to proper use, but instead engaged in an "orchestrated loan modification hoax," wherein Defendants wheedled struggling homeowners into continuing to make payments on their mortgages through promises of permanent loan modifications that never were granted. SAC, ¶ 3. Specifically, Plaintiffs allege that Defendants convinced mortgagees to enter into "trial" loan modification plans, governed by Trial Period Plan Agreements ("TPP Agreements") that allegedly promised permanent loan modifications upon successful completion of the trial period. Plaintiffs contend that the prospect of permanent loan modification induced many financially-imperiled homeowners to continue to make payments on their mortgage loans even where the homeowners otherwise might have put their resources towards alternative avenues of debt relief. According to Plaintiffs, however, the joke was on the homeowners, as permanent loan modifications very rarely occurred. Plaintiffs allege that, in January 2010, the United States Treasury reported that Chase had 424,965 HAMP-eligible loans in its portfolio, but that only 7,139 loans received permanent modifications. Plaintiffs Jean C. Wilcox ("Wilcox"), Michele and Robert Hood ("the Hoods") and Sharie Green ("Green") (collectively, "Plaintiffs") seek to represent a class of California residents who suffered as a result of these alleged practices.

Plaintiff Wilcox avers that she purchased a single-family home in Irvine, CA for herself and her family in November 2004. SAC, ¶ 33. Beginning on or about the summer of 2007, Wilcox alleges that she began experiencing difficulties in collecting on the accounts receivable due to her as a solo legal practitioner and that, around the same time, her family expenses (including college tuition for her children) began to increase. *Id.*, ¶ 39. Because these circumstances allegedly made it difficult for Wilcox to pay her mortgage bills, Wilcox contacted EMC in October 2007 to inquire about a loan modification. *Id.*, ¶ 40. After speaking to EMC representatives, EMC offered Wilcox two temporary forbearance agreements, which Wilcox characterizes as her first and second "temporary loan modifications." *See* SAC, ¶¶ 42, 49; Decl. of S. Middlebrooks ("Middlebrook Decl."), Exhs. 1, 2 (containing copies of the forbearance agreements).[2] When these temporary forbearance agreements

---

Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Accordingly, the Court takes judicial notice of the United States' actions mentioned in this section regarding Defendant, TARP, and the Home Affordable Modification Program.

[2]Consideration of the actual documents referred to by Plaintiffs in the complaint is proper. A court may rely on the full text of documents referred to in a complaint without converting a motion to dismiss into a motion for summary judgment. *In re Stac. Elecs.*

ended, Wilcox entered into a TPP Agreement with EMC   *See* SAC, ¶ 79; Middlebrooks Decl., Exh. 2 ("Wilcox TPP"). Under the terms of her TPP Agreement, Wilcox was to make three reduced mortgage payments. Wilcox TPP at 2. The TPP Agreement provides that upon "successful completion of the Trial Period Plan, EMC will send you a Modification Agreement for your signature which will modify the Loan as necessary to reflect this new payment amount." *Id.* Wilcox claims that, in reliance on the promise of a loan modification, Wilcox turned down offers to sell her residence, SAC, ¶ 56, and suspended payments on her unsecured credit accounts pursuant to express instructions from EMC representatives that payments on such accounts would jeopardize the loan modification process. *Id.*, ¶ 57. A permanent modification agreement, however, allegedly never came. *Id*, ¶ 87. Wilcox alleges that, throughout this entire process, she spoke to various EMC representatives who made a variety of false and misleading statements regarding her prospects for loan modification, as well as Defendants' intentions and activities with respect to foreclosure. *See generally* SAC, ¶¶ 33-92.

Plaintiffs Michele and Robert Hood allege similar misconduct by Defendants. The Hoods allegedly refinanced their home through a mortgage loan with Chase in June 2007. *Id.*, ¶ 95. After Mrs. Hood had her work hours involuntarily reduced in the second half of 2008, the Hoods contacted Chase to request a loan modification. *Id.*, ¶ 97. A Chase representative who identified herself as "Myracle" allegedly informed the Hoods that their loan would be eligible for modification only if their mortgage account showed at least ninety days delinquency. *Id.* Myracle allegedly advised the Hoods to intentionally allow their payments to become delinquent and the Hoods allegedly took this advice. *Id.* On November 24, 2008, once their accounts showed the requisite delinquency, the Hoods contacted Chase once again to request a loan modification. *Id.*, ¶ 98. Soon after, Chase apparently transferred the Hoods' loan to EMC, who, after a series of alleged missteps, offered the Hoods a Trial Plan Period. *See id.*, ¶¶ 100-103. The Hoods' TPP Agreement, executed on June 1, 2009, *id.*, ¶ 103; Middlebrooks Decl. Exh. 4 (containing a copy of the agreement) ("Hood TPP Agreement"), was titled a "Home Affordable Modification Trial Period Plan." Hood TPP Agreement at 1. The first sentence of the agreement states: "If I am in compliance with this Trial Period Plan . . . and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement . . .." *Id.* After successful completion of the trial period, the Hoods, unlike Wilcox, were in fact offered a permanent loan modification. But the modified loan terms proposed by Defendants had one major problem: the new loan asked the Hoods to submit monthly payments *higher* than the payments they had been required to make before they requested a modification. SAC, ¶ 107; Middlebrooks Decl., Exh. 5. The Hoods rejected Defendants' proposal and once again requested a modification that reduced their mortgage payments. SAC, ¶ 108. After hearing nothing from Defendants for close to a year, the Hoods aver that they received a letter from EMC on October 10, 2010 exclaiming that the couple was "eligible for a loan modification!" SAC, ¶ 110. The Hoods allege that, because they did not know what else to do, they applied again for a loan modification pursuant to this letter. *Id.* The allegedly have yet to receive a decision on their application. *Id.*

*Sec. Litig.*, 89 F.3d 1339, 1405 n.4 (9th Cir. 1996).

Finally, Plaintiff Green claims that she obtained a loan to purchase a condominium unit in Marina Del Ray, California from Top Dot Mortgage in September 2008, and that this loan subsequently was purchased by Chase. *Id.*, ¶ 116. After suffering severe health issues that required her to reduce her work hours, Green avers that she experienced difficulty making her mortgage payments. *Id.*, ¶ 117. Green contacted Chase and allegedly entered into two temporary forbearance agreements. *Id.*, ¶ 119, 123; Decl. of T. Reardon ("Reardon Decl."), Exhs. 1, 2. When these agreements expired, Green allegedly spoke with a representative from Chase who offered her a trial period plan for a loan modification. SAC, ¶ 125. According to Green, numerous Chase representatives told her that if she complied with the terms of the trial period plan, she would receive an offer for a permanent loan modification. *Id.*, ¶ 130. Green claims that, despite sending all required documentation, she received a letter from Chase indicating that no documents had been received. *Id.*, ¶ 126; Reardon Decl., Exh. 3. Green avers that, in response to the letter, she re-sent her documentation, only to receive still other notices that several of the documents had not arrived. *Id.*, ¶ 131-32. Green alleges that she has re-sent documents in response to all of these notices, but has yet to receive an official decision on an offer for a trial period plan. *Id.* Green avers that, throughout this period, Chase has reported her to credit reporting agencies as delinquent on her mortgage payments. *Id.*, ¶ 127.

Plaintiffs filed the SAC on March 14, 2011 asserting causes of action for breach of contract, promissory estoppel, unjust enrichment, fraud, violations of Cal. Bus. & Prof. Code § 17200, and violations of the California Consumer Legal Remedies Act.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc.*

*v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.     DISCUSSION

In the SAC, Plaintiffs assert a total of six causes of action. Defendants move to dismiss them all. The Court considers each cause of action in turn.

### a.     Breach of Contract – Wilcox and the Hoods

The Court first addresses Plaintiffs' claim for breach of contract. Because Wilcox and the Hoods actually executed TPP Agreements with Defendants, their breach of contract claims are materially different from that of Plaintiff Green  The Court therefore analyzes the Wilcox and Hood breach of contract claim separately from the Green breach of contract claim, which is discussed below. Under California law, a viable claim for breach of contract requires allegations establishing (1) the existence of a contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damage to the plaintiff. *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Here, Defendants (incorrectly) contend that Wilcox and the Hoods have failed to adequately allege the first and third elements of this claim.

#### i.     Existence of a Contract

##### A.     Certainty of Terms

The first area of dispute between the parties centers on whether the agreements described in the SAC constitute enforceable contracts. In order to be enforceable, contracts in California must be "sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) (quoting *Ersa Grae Corp. v. Fluor Corp.* 1 Cal.App.4th 613, 623 (1991)). Specifically, "a promise must be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the

assessment of damages." *Ladas v. California State Auto. Assn.*, 19 Cal.App.4th 761, 770 (1993). "Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." *Cal. Lettuce Growers v. Union Sugar Co.,* 45 Cal.2d 474, 481 (1955). On the other hand, "neither law nor equity requires that every term and condition of an agreement be set forth in the contract," *Elite Show Services, Inc. v. Staffpro, Inc.*, 119 Cal. App. 4th 263, 269 (2004), and courts do not favor destruction of contracts on uncertainty grounds. *Lettuce Growers*, 45 Cal. 2d at 481. In lieu of explicitly listing essential terms, a contract may "furnish a standard for determination of [the] terms." *Roberts v. Adams*, 164 Cal. App. 2d 312, 315 (1958).

In this case, Defendants submit that because the TPP Agreements referenced in the SAC fail to specify the essential terms of a loan modification – namely, the negotiated principal and monthly payment amounts, the applicable interest rates, and the number of payments required – the TPP Agreements do not constitute valid contracts, but merely unenforceable "agreements to agree." Def.'s Mot. at 12 (citing *Bustamante*, 141 Cal. App. 4th at 213 (2006)). Defendants arguments miss the mark. Plaintiffs do not contend that the TPP Agreements are contracts for a permanent loan modification. Instead, plaintiffs' theory is that the TPP Agreement is a contract governing a three-month trial period, and that compliance with its obligations entitles plaintiffs to either (1) a new contract with a permanent loan modification or (2) a decision, made in good faith, on whether plaintiffs are entitled to the permanent modification by the modification effective date stated in the TPP. The TPP Agreements establish clear terms with respect to the modified payments during the three-month trial period. At a minimum, then, the TPP Agreements contain all essential and material terms necessary to govern the trial period repayments and the parties' related obligations. *See Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 351 (D. Mass. 2011) (rejecting argument that TPP Agreements were unenforceable because they failed to list specific terms of a permanent modified loan).[3] The terms of the TPP

---

[3]Moreover, at least in the case of the Hoods, their TPP Agreement arguably *does* provide the essential terms for a permanent loan modification. As the California Court of Appeals explained in *Roberts*, in lieu of explicitly listing essential terms, a contract may "furnish a standard" for determining them. *Roberts v. Adams*, 164 Cal. App. at 315. Plaintiffs aver that the TPP Agreements adopted the HAMP "Waterfall Formula," as a method for calculating the terms of any modified loans. According to the SAC, the "Waterfall Formula" directs mortgage providers participating in HAMP to determine modified loan terms by (a) capitalizing accrued interest, advances, and third party fees; (b) reducing the current interest rates in increments of .125 percent with a floor of 2 percent; (c) extending the loan terms up to 480 months; and (d) providing a non-interest bearing forbearance amount that will result in a balloon payment due on the maturity of the loan. SAC, ¶ 162. The Hood's TPP Agreement explicitly states that "if [the Hoods] are in compliance with this Trial Period Plan . . . , then the Lender will provide [them] with a Home Affordable Modification Agreement." Hood TPP at 1. It is therefore plausible to assume, for purposes of a motion to dismiss, that the parties intended to incorporate the HAMP "Waterfall Formula" into the Hood's TPP Agreement. *See*

Agreements are sufficiently certain to warrant enforcement.

### B.    Consideration

Defendants next argue that, because the TPP Agreements demanded no action from Plaintiffs that was not already mandated under the terms of their mortgage loans, the SAC fails to allege consideration in support of the TPP Agreements. "A contract is supported by an adequate consideration if there is some benefit to the promisor or detriment to the promisee." *S. Cal. Enters. V. E. Walter & Co.*, 78 Cal. App. 2d 750, 760 (1947). "The law does not weigh the quantum of the consideration." *Brawley v. Crosby Research Found., Inc.*, 73 Cal. App. 2d 103, 112 (1946). In this case, the TPP Agreements allegedly required Plaintiffs to provide additional documentation to be considered for a modification. SAC, ¶¶ 66, 81, 98, 101, 125, 131. Because consideration encompasses any detriment to the promisee, no matter how small, Plaintiffs adequately plead consideration for the TPP Agreements. *See Durmic v. JP Morgan Chase Bank, N.A.*, 2010 WL 4825632 at *3 (2010) (holding that plaintiffs had adequately alleged consideration for the TPP Agreements by fulfilling documentation requirements because consideration "entails even the slightest trouble or inconvenience."). The element of consideration is sufficiently alleged.

### ii.    **Breach**

Finally, Defendants submit that, even if a valid contract is presumed to exist, Plaintiffs fail to adequately plead the occurrence of a breach. This argument lacks merit. Upon successful completion of the trial program, plaintiffs allege that the Wilcox and Hood TPP Agreements promise either a new contract with a permanent loan modification or, at the least, a timely decision, made in good faith, on Plaintiffs' application for a modified loan. *See e.g.* SAC, ¶¶ 28-29, 160-161. The SAC contains plausible allegations that Defendants breached both the express terms of their agreements as well as the covenant of good faith and fair dealing implied in every contract. *See e.g.* SAC ¶¶ 31-32, 67, 107-8, 169; *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002) (explaining that although the covenant of good faith and fair dealing may not be used to contradict the express terms of a contract, all contracts "impose[] upon each party a duty of good faith and fair dealing . . . [to not act in a way that deprives] the other party from receiv[ing] the fruits of the contract."). Any further dispute regarding the merits of these allegations is not appropriate for resolution at the motion to dismiss stage.

Wilcox and the Hoods have adequately stated a cause of action for breach of contract. Defendants' Motion to Dismiss is DENIED with respect to this claim.

---

*Durmic v. JP Morgan Chase Bank, N.A.*, 2010 WL 4825632 at *4 (D. Mass. 2010) ("At the end of the day, the issue [of whether the parties meant to import HAMP guidelines for calculating loan terms into the TPP Agreement] is one of the parties' intent, and cannot be resolved in the context of a motion to dismiss.").

**b.**      **Breach of Contract – Green**

By contrast, Plaintiff Green's breach of contract claim fails.  Green does not aver that she ever executed a written TPP Agreement with Defendants.  Rather, Green's allegations – and the content of the documents to which Green refers in the SAC – indicate that Chase never made a decision on whether to offer Green a trial period plan.  SAC, ¶ 127; Reardon Decl., Exh. 3.  Although Green alleges that Chase representatives orally promised her a trial period plan, SAC, ¶ 125, the statute of frauds, which requires written memorialization of all transactions "for the sale of real property, or of an interest therein," bars Green from relying on these oral misrepresentations to support her breach of contract claim.  Cal. Civ. Code § 1624(a)(3).  To the extent that Green is attempting to construct her breach of contract claim around the two forbearance agreements she received, *see* SAC, ¶ 119, 123; Reardon Decl., Exhs. 1, 2, allegations that these agreements were breached are not sufficiently articulated.

Defendants' Motion to Dismiss is thus GRANTED with respect to Green's breach of contract claim.  This claim is DISMISSED WITH LEAVE TO AMEND.

**c.**      **Promissory Estoppel**

Defendants next move to dismiss Plaintiffs' promissory estoppel cause of action.  The equitable doctrine of promissory estoppel, which is recognized in California, has three basic elements: (1) promise; (2) reasonable reliance; and (3) injury.  *Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 276 (1977). Plaintiffs allege that Defendants promised permanent loan modifications if certain conditions were met, SAC ¶¶ 25, 29, 42, 80 (Wilcox), SAC ¶¶ 97-99, 101, 103-05, 109-11, 113 (Hoods), SAC ¶¶ 118-19, 122-23, 125, 130 (Green), and that Plaintiffs reasonably relied to their detriment on these representations by, for instance, allowing their mortgage payments to fall further into delinquency, choosing to forego other avenues of curing their default (i.e. bankruptcy or short sales), cashing in on 401(k) funds, and putting money towards their mortgage payments that could have been used for payments to other creditors.  SAC, ¶¶ 46-48, 50-54, 56-67, 60, 65-66, 73, 75 (Wilcox); SAC, ¶¶ 97, 114 (Hoods); SAC, ¶¶ 125, 127-28.   Whether or not Plaintiffs' reliance actually was reasonable is a question for the fact-finder – not a question to be resolved in the instant Order.  *Makaeff v. Trump University*, 2011 WL 1872654 at *3 (S.D. Cal. 2011) (citing *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995)); *see also West Shield Investigations and Security Consultants v. Superior Court*, 82 Cal. App. 4th 935, 957 (2000).  Accepting Plaintiffs' plausible allegations as true, the SAC pleads a textbook claim for promissory estoppel.

Defendants Motion to Dismiss this cause of action is DENIED.

**d.**      **Unjust Enrichment**

The SAC further sets forth a claim for unjust enrichment based on Defendants' alleged

receipt of "mortgage payments and related fees and/or charges beyond that to which defendants were entitled." SAC, ¶ 175. The Court notes, however, that it is questionable whether an independent cause of action for unjust enrichment even exists under California law. Although the authority on this issue is somewhat split, several recent and well-reasoned cases hold that "unjust enrichment does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales*, - - F. Supp. 2d - - -, 2010 WL 4867562, at *39 (C.D. Cal. 2010) (quoting *Melchior v. New Line Prod., Inc.*, 106 Cal. App. 4th 779, 793 (2003)). *See also id.* ("Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself. Simply put, there is no cause of action in California for unjust enrichment."); *Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc,*, 578 F. Supp. 2d 1242, 1250 n.13 (E.D. Cal. 2008) ("The Court notes that there is no cause of action in California for unjust enrichment."). In any event, it is settled that "a quasi-contract action for unjust enrichment does not lie where," as in this case, "express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125 (2001). Plaintiffs' cause of action for unjust enrichment consequently fails.

Defendants' Motion to Dismiss is GRANTED with respect to this claim. Plaintiffs' cause of action for unjust enrichment is DISMISSED WITH PREJUDICE.

### e.   **Fraud**

Defendants next challenge the viability of Plaintiffs' fraud claim, arguing that Plaintiffs fail to plead the element of justifiable reliance on Defendants' alleged misrepresentations. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (holding that justifiable reliance is a necessary element of every fraud claim). Defendants argument fails. "Except in rare cases where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiffs' reliance is reasonable is a question of fact," not amenable to resolution by way of a motion to dismiss. *Makaeff v. Trump University*, 2011 WL 1872654 at *3 (S.D. Cal. 2011) (citing *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995)); *see also West Shield Investigations and Security Consultants v. Superior Court*, 82 Cal. App. 4th 935, 957 (2000). This is not one of those rare cases: a determination of whether Plaintiffs justifiably relied on Defendants' misrepresentations will be made at later stage of the case.[4]

---

[4]Pursuant to Fed. R. Civ. P. 9(b), causes of action for fraud must be pled with "particularity," meaning that a complaint must "specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Although Defendants do not contest the sufficiency of Plaintiffs' allegations, the Court notes that Plaintiffs' have pled the circumstances of the alleged fraud in great detail, easily satisfying the particularity standard of Rule 9(b)**.**

Defendants' Motion to Dismiss the SAC's claim for fraud is DENIED.

## f.  Cal. Bus. & Prof. Code § 17200 *et. seq.*

The Court next turns to the first of Plaintiffs' two statutory claims: a cause of action for violation of California Business & Professions Code Section 17200 *et. seq.*, commonly referred to as the Unfair Competition Law, or the "UCL." The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992). "The UCL covers a wide range of conduct. It embraces anything that can properly be called a business practice and that at the same time is forbidden by law. . . . Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003)). An "unlawful" act for purposes of the UCL is anything proscribed by "some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1159. In order to have standing under the UCL, a plaintiff must allege that she suffered economic injury. *See* Cal. Bus. & Prof. Code § 17204; *see also Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1088-89 (N.D. Cal. 2004). In the case, the SAC plausibly alleges common law violations in the form of breach of contract, promissory estoppel and fraud. The SAC also contains plausible averments of monetary harm. *See* SAC, ¶¶ 46-48, 50-54, 56-57, 60, 65-66, 73, 75 (Wilcox); SAC, ¶¶ 97, 114 (Hoods); SAC, ¶¶ 125, 127-28 (Green). Plaintiffs thus have standing to pursue a cause of action under the UCL and have stated a plausible claim that the statute was violated.

Defendants' Motion to Dismiss Plaintiffs' UCL claim is DENIED.

## g.  California Consumer Legal Remedies Act

Plaintiffs' next statutory claim asserts a cause of action under the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*. The CLRA, however, applies only to transactions involving "goods or services." Cal. Civ. Code § 1770. Courts have held that an extension of credit, such as a mortgage loan, is neither a "good" nor a "service" under the specific meaning ascribed to those terms in the CLRA. *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002 (N.D. Cal. 2009); *Justo v. Indymac Bancorp*, 2010 WL 623715 at *3 (C.D. Cal. 2010). *Cf. Fairbanks v. Superior Cort*, 46 Cal. 4th 56, 61 (2009) (holding that a life insurance policy constitutes neither a "good" nor a "service" within the meaning of the CLRA). The logical extension of this principle is that mortgage loan modifications do not qualify as "goods" or "services" under the statute either. *See Justo*, 2010 WL 623715 at *3 (finding loan modifications to be neither a "good" nor a "service" for purposes of the CLRA). The CLRA therefore does not cover Plaintiffs' claims.

Defendants' Motion to Dismiss is GRANTED with respect to Plaintiffs' cause of action for violation of the CLRA. This claim is DISMISSED WITH PREJUDICE.

## IV.    DISPOSITION

For the reasons set forth above, Defendants' Motion to Dismiss is DENIED with respect to Plaintiffs' promissory estoppel, fraud, and UCL claim, as well as the breach of contract claim stated by Wilcox and the Hoods.

Defendants' Motion to Dismiss is GRANTED with respect to Plaintiffs' claim for unjust enrichment and violation of the CLRA.  Theses claims are DISMISSED WITH PREJUDICE. Defendants' Motion to Dismiss is also GRANTED with respect to the breach of contract claim stated by Green.  Green's breach of contract claim is DISMISSED WITH LEAVE TO AMEND.

Plaintiffs shall file any amended complaint by August 16, 2011.

The Clerk shall serve this minute order on all parties to the action.